UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
_____

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**Bob Kasolas, Esq.**
**BRACH EICHLER LLC**
101 Eisenhower Parkway
Roseland, New Jersey  07068-1067
Tel No.:  (973) 403-3139
Fax No.:  (973) 618-5539
bkasolas@bracheichler.com
*Attorneys for Creditor, NCP Sigma LLC*

IN RE:

MATAWAN ACQUISITION LLC

     Debtor

Case No.:    21-13084 (MBK)

Chapter 11 Proceeding

Hon. Michael B. Kaplan, U.S.B.J.

## MOTION FOR THE ENTRY OF AN ORDER: (I) DISMISSING THE DEBTOR'S BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 1112(b); OR ALTERNATIVELY: (II) GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)

Secured creditor NCP Sigma LLC ("NCP"), by and through its undersigned counsel, hereby submits this motion for entry of an Order: (i) pursuant to 11 U.S.C. § 1112(b) dismissing the bankruptcy case of the debtor Matawan Acquisition LLC ("Matawan" or the "Debtor"); or alternatively (ii) pursuant to 11 U.S.C. § 362(d) granting NCP relief from the automatic stay to continue its efforts to enforce its rights against its collateral.  In support of its Motion, NCP respectfully submits as follows:

### PRELIMINARY STATEMENT

1.     Debtor is a single asset real estate entity.  *[Docket Entry # 1].*

2.     NCP is the primary lender to the Debtor, having first priority security interest on the Debtor's real property more commonly known as 58-60 Main Street, Matawan, New Jersey

(the "Property"), as well as an absolute, unconditional assignment of all leases and rents generated by the Debtor's real property.

3.     On April 15, 2021, the Debtor commenced its second Chapter 11 Bankruptcy in two (2) years, only after the entry of a Final Judgment in Foreclosure by the Superior Court of New Jersey, Chancery Division, and NCP's motion to have a court appointed Special Master sell the Property.

4.     The Debtor has available assets, other than its real estate, which is worth significantly less than its debt to NCP as evidenced by the Note, Mortgage and Foreclosure Judgment, making a meaningful plan of bankruptcy reorganization is impossible.

5.     The Debtor continues to sustain and/or otherwise cause a substantial and continuing loss to the Debtor's bankruptcy estate.  The Debtor clearly lacks the financial resources to make its monthly post-petition payment obligations to NCP and/or the quarterly post-petition real estate taxes due to the Borough of Matawan, causing further loss to the Debtor's bankruptcy estate.

6.     For these reasons, and for the reasons set forth herein, NCP submits that there is cause under 11 U.S.C. § 1112(b) to dismiss the Debtor's bankruptcy case and/or under 11 U.S.C. § 362(d) to grant NCP relief from the automatic stay to enforce its rights against its collateral.

## BACKGROUND

7.     On April 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, with the United States Bankruptcy Court for the District of New Jersey.  See Docket Entry # 1.

8.     The Debtor is a single-asset real estate debtor, whose asset is the Property.  See Docket Entry # 1.  The Property is commercial and comprised of two retail buildings on two sides totaling 1.6300 acres on 58 Main Street and a 3,868 square foot building that was

BE:11751842.1/NOR306-278956

constructed in 1995 and previously utilized as a Quick Chek but is now vacant, and a 6,435 square foot building on 60 Main Street that was constructed in 1925 and was previously utilized as a liquor store.

9.      The Debtor reports having no cash, deposits, prepayments, accounts receivable, investments and inventory, and its sole assets are listed as "[o]ffice equipment," all of which are subject to NCP's UCC-1 lien on personal property. *Docket Entry # 1, Schedule A/B*.

10.      Additionally, the Debtor reports only having three (3) unsecured creditors and reports one commercial lease with Central Jersey Transportation, Inc. that is subject to the Assignment of Rents held by NCP. *Docket Entry # 1, Schedule E/F*.

11.      According to the Lease in NCP's file, the Debtor's lease with Central Jersey Transportation only generates $3,970.00 per month for the Debtor. <u>*See*</u> *the accompanying Certification of Marshall Burchard, Ex. "K"*.

12.      NCP's relationship with the Debtor stems from a commercial mortgage loan granted to the Debtor by Sterling National Bank on March 23, 2016 in the amount of $4,000,000.00 evidenced by a Promissory Note and Mortgage. <u>*See*</u> *Burchard Cert. at Ex. "A" and "B"*.

13.      The principal balance of the debt increased to $5,350,000.00 on August 12, 2016 pursuant to the terms of an Amendment to Mortgage and Other Loan Documents ("the Amendment") signed by Sterling National Bank and the Debtor. *Burchard Cert., Ex. "D"*.

14.      After the Debtor defaulted on its obligations under the Note and Mortgage, a Final Judgment in Foreclosure was entered in favor of Sterling National Bank and against the Debtor on January 30, 2019 by the Superior Court of New Jersey, Chancery Division, in the matter of <u>Sterling National Bank v. Matawan Acquisition, LLC, et. al.</u> Docket No.: F-11998-18 ("the

Foreclosure Action"). The amount of the Foreclosure Judgment was $5,716,865.02, plus contract interest at 8.95% per annum through January 30, 2019, and post-judgment interest thereafter. *Burchard Cert, Ex. "E"*.

15. The Foreclosure Sale was initially scheduled to take place on August 19, 2019. Prior to the sale on April 29, 2019, the Debtor sought relief from the Bankruptcy Court under Chapter 11 of the United States Bankruptcy Code in the matter of <u>Matawan Acquisition, LLC</u>, Case No.: 19-18576(MBK) (the "1st Bankruptcy"). *Kasolas Cert., Ex. "A"*.

16. On August 21, 2019, the Bankruptcy Court denied the Debtor's motion to extend the exclusivity period for filing a Chapter 11 Plan and Disclosure Statement. *Kasolas Cert., Ex. "B"*.

17. On October 28, 2019, at a status conference before the Bankruptcy Court, the Bankruptcy Court entered an Order *sua sponte* directing the Debtor to file a Plan and Disclosure Statement, ordering that "if the Debtor fails to file a Plan and Disclosure Statement by December 2, 2019, the case will automatically convert to a chapter 7 case without further notice." *Kasolas Cert., Ex. "C"*.

18. More than seven (7) months after its bankruptcy filing, the Debtor finally filed a proposed plan and disclosure statement with the Court. Upon reviewing that proposed plan and disclosure, NCP's predecessor Sterling National Bank filed an Objection to the Debtor's proposed Plan and Disclosure Statement, contending that the proposed plan was "patently unconfirmable," and noting that:

(a) "The Debtor has consistently failed to meet deadlines" in the 1st Bankruptcy reflecting "the Debtor's lack of good faith in diligently pursuing reorganization";

(b) "The Debtor's plan is speculative in nature," and

-4-

(c)     The proposed "payment of Sterling's secured interest is not feasible."

*[Kasolas Cert., Ex. "D" and "E"].*

19.     The 1st Bankruptcy was subsequently dismissed by the Court on March 6, 2020. *[Kasolas Cert., Ex. "F"].*

20.     Following the dismissal of the Debtor's 1st Bankruptcy, Sterling National Bank's interest in the Promissory Note, Mortgage and Foreclosure Judgment were assigned to NCP on or around September 18, 2020. *Burchard Cert., Ex. "G" and "H".*

21.     However, due to the restriction on gatherings caused by the nationwide Covid-19 crisis, the Monmouth County Sheriff was unable to reschedule the foreclosure sale following the dismissal of the 1st Bankruptcy.

22.     Accordingly, on or around March 19, 2021, NCP filed a motion with in the Foreclosure Action for the appointment of a Special Master to sell the Property.

23.     On April 15, 2019, prior to the return date of that motion in the Foreclosure Action, the Debtor commenced this second Chapter 11 bankruptcy, and the adjudication of that motion has been stayed as a result of this bankruptcy.

**B.     The Debtor's Post-Petition Obligations**

24.     Pursuant to the terms of the Amendment, the Debtor is required to make monthly mortgage payments, beginning on May 1, 2021 (the first post-petition payment) in the amount of $31,090.49.  These payments are to continue on the first of each month until April 1, 2026, at which time the entire balance due under the Loan balloons and becomes immediately due and payable. *Burchard Cert., Ex. "C".*

BE:11751842.1/NOR306-278956

### A. Secured Claims Against the Debtor

25.     As of the Petition Date, the Debtor owed NCP $5,921,096.08. The payment arrearage on the Debtor's mortgage-secured loan for the Mortgaged Property totaled $1,257,227.25. *Burchard Cert., ⁋ 24*.

26.     Additionally, as of the Petition Date, the Debtor reported that it owed ACTFII New Jersey for an unpaid real estate tax sale certificate. *Docket Entry # 1, Schedule D*. This claim has now increased due to Debtor's failure to make its 2nd quarter 2020 payment of real estate taxes. *Kasolas Cert. Ex. "G"*.

27.     In connection with this motion, NCP has provide an appraisal of the Property that is the Debtor's only asset, which reflects an appraised value of $2,000,000.00. *See Burchard Cert., Ex. "K"*.

28.     NCP respectfully submits that the secured claims against the Property exceed its appraised value, leaving the Debtor without equity in the Property (its only asset).

29.     The post-petition rents the Debtor collected/collects by the Debtor are grossly insufficient to: (i) make payments of principal and interest to NCP in the amount of $31,090.49; (ii) estimated quarterly tax payments in excess of $16,000.00; and (iii) maintain property insurance premiums and water/sewer charges at the Property.

30.     Based upon the significant debts due and owing by the Debtor to secured creditors, the overwhelming (and growing) arrearages and the limited revenues being collected in post-petition rent by the Debtor, the Debtor cannot possibly propose any meaningful plan of bankruptcy reorganization.

BE:11751842.1/NOR306-278956

## RELIEF REQUESTED AND BASIS THEREFOR

31.     NCP seeks entry of an Order pursuant to 11 U.S.C. §§ 1112(b) and/or 362(d) dismissing the Debtor's bankruptcy petition and/or granting NCP relief from the automatic stay to enforce NCP's rights against the collateral.

## I.     DISMISSAL OF THE DEBTOR'S BANKRUPTCY CASE IS WARRANTED

32.     Section 1112(b)(1) of the Bankruptcy Code provides:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish the requested conversion or dismissal is not in the best interests of the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, ***if the movant establishes cause***… (emphasis added).

33.     The inclusion of the word "shall" was a change in the statute pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which eliminated the vast discretion that bankruptcy courts had previously been granted in making a conversion determination prior to BAPCPA's enactment.   See 7 Collier on Bankruptcy ¶ 112.04(1) at 1112-21 to 1112-22 (15th ed. rev.)

34.     Therefore, pursuant to Section 1112(b), absent the enumerated mitigating circumstances, upon a showing of "cause," the Court must dismiss the Debtor's bankruptcy case. NCP submits that no mitigating circumstances exist in the within bankruptcy and, therefore, this Court must dismiss the Debtor's bankruptcy case.

35.     It is well settled that "a chief purpose of the bankruptcy laws is to 'secure a prompt and effectual administration and settlement of the estate of all bankrupts.'"   Katchen v. Landy, 382 U.S. 323, 328-29 (1966) (citations omitted).   In order to avoid incurring the costs associated with such administration in cases where such costs are not justified, the United States

-7-

Congress enacted 11 U.S.C. § 1112(b) to provide a Court with a tool to eliminate the burden of such costs in inappropriate Chapter 11 cases at the earliest possible stage. See In re: Woodbrook Assocs., 19 F.3d. 312, 317 (7th Cir. 1994).

36. Thus, the threshold question for the Bankruptcy Court when ruling on a motion to dismiss under 11 U.S.C. § 1112(b) is whether "cause" exists to grant such a motion. As set forth herein, NCP submits that such "cause" exists to dismiss the Debtor's bankruptcy case under 11 U.S.C. § 1112(b).

37. In this instance, the "cause" to grant NCP's motion to dismiss is present for the following reasons:

(a) there is a continuing loss to the value of the Debtor's estate and the absence of a reasonable likelihood of rehabilitation;

(b) the Debtor is unable to fund an effective plan of reorganization;

(c) the Debtor commenced this Bankruptcy case in bad faith; and

(d) dismissal of the Bankruptcy case is in the best interest of the creditors and the Debtor's estate.

## A. There is a Substantial, Continuing Loss to Estate and Absence of Reasonable Likelihood of Rehabilitation

38. Under 11 U.S.C. § 1112(b)(4)(A), an enumerated example of "cause" to dismiss a debtor's bankruptcy is whether there is both a substantial or continuing loss to or diminution of the estate and that there is an absence of a reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A); see In re Lizeric Realty Corp., 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995) (noting that the purpose of this section is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation"); In re AdBrite Corp., 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) ("[c]ourts have

held that a negative cash flow post-petition and an inability to pay current expenses satisfy the elements of § 1112(b)(1)").

39.     As is demonstrated below, here, both prongs of Section 1112(b)(4)(A) are satisfied.

### (i)     Substantial or Continuing Loss or Diminution of the Estate

40.     The first prong of Section 1112(b)(4)(A) requires only a showing of either a substantial or continuing loss to the estate **or** a diminution of the estate – it does not require both. See Moody v. Security Pacific Bus. Credit, Inc., 85 B.R. 319, 343 (W.D. Pa. 1988), vacated on other grounds, 858 F.2d. 137 (3d. Cir., 1988).   "All that need be found is that the estate is suffering some diminution of value."   In re: Kanterman, 88 B.R. 26, 29 (S.D.N.Y.), 1988; In re: ABEPP Acquisition Corp., 191 B.R. 365, 367 (Bankr. N.D. Ohio, 1996).

41.     Moreover, a showing that a debtor has incurred continuing losses, has maintained a negative cash flow after its bankruptcy filing, or has become administratively insolvent satisfies this element.   Loop Corp. v. U.S. Trustee (In re: Loop Corp.), 379 F.3d. 511, 516 (8th Cir., 2004); In re: Route 202 Corp. t/a Lionti's Villa, 37 B.R. 367, 374 (Bankr. E.D. Pa., 1984) ("[o]bviously, if the debtor has negative cash flow after the entry of the order for relief in the chapter 11 case, the [elements of § 1112(b)(1) are] satisfied").

42.     In this matter, there exists both a continuing loss to the Debtor's estate and a diminution of value.   First, as a result of the Debtor's having assigned its rental revenue to NCP, the Debtor does not generate income that can be used for the Debtor's bankruptcy reorganization, thereby resulting in negative cash flow.   Furthermore, even if the Debtor uses all of its rental revenue to fund post-petition operations, the Debtor is nevertheless experiencing substantial operating losses. *See Docket Entry # 1; Burchard Cert., Ex. "J", "K" and "L"*.

-9-

43.     In fact, the only potential for income reported by the Debtor is a lease with Central Jersey Transportation that leaves the Debtor more than $27,000 short each month on making its post-petition mortgage payments, with no remaining income to pay other post-petition operating expenses. *Burchard Cert., Ex. "J", "K" and "L"*.

44.     These operating losses will exacerbate the deterioration of the Debtor's Bankruptcy Estate.  As of the Petition Date, the secured claims against the Property already exceeded two (2x) times the value of the Property.

45.     As a result, NCP submits that the present circumstances represent the situation envisioned by the Court in <u>Loop Corp.</u>, <u>supra</u> – as the Debtor's growing post-petition expenses are diminishing the value of its Bankruptcy Estate, money is effectively being taken "straight from the pockets of creditors." <u>Id</u>. at 516.

### (ii)     Absence of Reasonable Likelihood of Rehabilitation.

46.     To satisfy the second prong of § 1112(b)(4)(A), the movant must show an absence of a reasonable likelihood that the debtor will be able to rehabilitate. Importantly, the term "rehabilitate" as used in § 1112(b)(4)(A) is not synonymous with "reorganize." <u>See</u> 7 <u>Collier</u> ¶1112.04[5][a] at 1112-36; <u>see</u> <u>also</u>, e.g., <u>In re: Lizeric Realty Corp.</u>, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995); <u>In re: Schriock Const.</u>, Inc., 167 B.R. 569, 576 (Bankr. D.N.D. 1994) ("'Rehabilitation thus means something different from the term 'reorganization' as used in reference to Chapter 11."). Rather, a movant must show only that a debtor's financial affairs are such that it cannot re-establish itself on a firm, sound financial basis. <u>In re Brown</u>, 951 F.2d 564, 572 (3d Cir. 1991) ("[h]owever honest in its efforts the debtor may be, and however sincere in its motives, the [court] is not bound to clog its docket with visionary or impractical schemes for resuscitation); <u>see also</u> <u>Moody</u>, 85 B.R. at 344; <u>In re Schriock Const., Inc.</u>, 167 B.R. at 576; <u>In re First Lewis Road Apartments, Inc.</u>, 11 B.R. 575, 576 (Bankr. E.D. Va. 1981). "The purpose of

-10-

[section 1112(b) of the Bankruptcy Code] is to prevent the debtor-in-possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." In re <u>Adbrite Corp.</u>, 290 B.R. at 215.

47.     As noted above, the Debtor owes significant debts to secured creditors that collectively exceed the Debtor's appraised value of the Property.  Combined with the Debtor's minimal monthly operating revenues and significant pre- and post-petition arrears due secured creditors, it is clear that the Debtor will be unable to effectuate a plan of reorganization.

48.     These significant shortfalls make it impossible for the Debtor to submit a <u>viable</u> plan of reorganization which is, in and of itself, grounds for dismissal of the Debtor's Bankruptcy.  <u>See</u> <u>In re: Shar</u>, 253 B.R. 621 (Bkrtcy. D.N.J., 1999) (holding that a debtor's inability to "effectuate a plan of organization…warrants conversion or dismissal" of a debtor's bankruptcy).

49.     Moreover, this is the Debtor's second bankruptcy, and the Debtor was unable to supply this Court with a confirmable plan during the ten (10) months of their 1st Bankruptcy filing.  Bankruptcy Courts have held that a:

> …repeat bankruptcy filer should show that there is some legitimate prospect of reorganization, recognizing that an earlier attempt was not successful.  Without any such prospect, the second filing merely serves to delay the legitimate actions of secured creditors in recovering their collateral. A bankruptcy filing without a reorganization prospect is not in good faith.
>
> <u>In re Brown</u>, 2005 WL 2589194, *2 (Bankr. E.D. Pa. Mar. 31, 2005).

50.     Based upon the foregoing, NCP submits that clear "cause" exists under 11 <u>U.S.C.</u> § 1112(b)(4)(A) to dismiss the Debtor's Bankruptcy.

BE:11751842.1/NOR306-278956

**B.     The Debtor Cannot Fund an Effective Plan of Reorganization**

51.     Similarly, Bankruptcy Courts have not hesitated to apply 11 <u>U.S.C.</u> § 1112(b) of the Bankruptcy Code to dismiss a Chapter 11 Bankruptcy in cases where the debtor is unable to propose or effectuate a viable reorganization plan.  <u>See</u> <u>In re: Great Am. Pyramid Joint Venture</u>, 144 B.R. at 791 (holding that a court may "dismiss or convert a chapter 11 case if the court determines that it is unreasonable to expect a plan can be confirmed in the chapter 11 case.") <u>See</u> <u>also</u> <u>In re: 3 Ram, Inc</u>, 343 B.R. 113 (Bkrtcy. E.D. Pa., 2006), (if a "Chapter 11 case cannot achieve a reorganization within the statutory requirements of the Code, then there is no point in expending estate assets on administrative expenses, or delaying creditors in the exercise of their nonbankruptcy law rights.")

**(i)     Under Applicable New Jersey Law, the Debtor Has No Interest In The Cash Collateral of the Estate**

52.     Given the fact that the Debtor absolutely assigned its rental revenue to NCP, the rents for the property are not a part of the Debtor's bankruptcy estate.

53.     Section 363(a) of the Bankruptcy Code defines cash collateral to include rents.   In addition, Section 363 provides that a debtor-in-possession may not use, sell or lease cash collateral unless: (a) each entity that has an interest in such cash collateral consents; or (b) the Court, after notice and hearing, authorizes such use, sale, or lease in accordance with Section 363 of the Bankruptcy Code.

54.     As set forth on the Debtor's bankruptcy petition, the Debtor is a single-asset real estate entity and such real estate is its sole source of income in the form of the rents its generates. However, since the Debtor granted an absolute assignment of the rents to Sterling (assignor of NCP) at the time it granted the Mortgage, the Property's rents are not property of the estate and do not constitute "cash collateral."

55.     New Jersey law is well settled that an Assignment of Rents is considered absolute, with title passing to the assignee and the assignor retaining no interest in the rents.  In re: Loco Realty Corp., 2009 WL 2883050 (S.D.N.Y.);  Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34 (3d Cir. 1993); First Fidelity Bank N.A. v. Jason Realty, L.P., 59 F.3d 423 (3d Cir. 1995).

56.     In In re: Jason Realty, L.P., 59 F.3d. 423 (3d. Cir. 1995), the Third Circuit Court of Appeals held that rental income generated by real property that has been absolutely assigned to a secured creditor is not property of the bankruptcy estate and could not be used by the debtor as cash collateral.  Id. at 427-428.

57.     Specifically, the Third Circuit determined that under New Jersey law, an "absolute assignment transfers title to the assignee upon its execution."  Id. at 427.  Upon reviewing the language in the loan documents in question, the Third Circuit found that the documents evidenced the parties' unambiguous "agreement to assign present title" to the rents, while granting the debtor a revocable license to collect the rents.  Id.

58.     In so holding, the Third Circuit quoted Matter of Glen Properties, 168 B.R. 537 (D.N.J., 1993), finding that the assignment language in that case, as in the case before it, was quintessentially an absolute assignment:

> That assignment provided that the assignor "for value received…does hereby sell, assign, transfer, set over and deliver unto the Assignee all leases…together with the immediate and continuing right to collect and receive all of the rents."  The assignment also provided "That so long as there shall exist no default by the Assignor in the payment of any indebtedness secured hereby, Assignor shall have the right under a license granted hereby…to collect upon…all of said rents."

Id. at 427-428.  As a result, the Third Circuit concluded that the rental income was not property of the debtor's bankruptcy estate.  Id. at 428.

BE:11751842.1/NOR306-278956

59. In the instant matter, there can be no dispute that the Debtor gave NCP an absolute assignment of rents. The Mortgage and Assignment of Rents executed by and between the Debtor and NCP contain virtually the exact language as quoted above, which was determined by the Third Circuit in <u>Jason Realty</u> to constitute an absolute assignment of rents. *See Burchard Cert., Ex. "C"*. As a result, the Debtor absolutely and unconditionally assigned the rental income generated by the Property to NCP upon execution of the loan documents, maintaining only a revocable license to collect these rents.

60. Moreover, the Debtor's license to use the rental income generated by the Property was revoked upon the Debtor's default under the applicable loan documents. *See Burchard Cert., Ex. "C"*.

61. As a result, as of the Debtor's Bankruptcy Petition Date, the Debtor had no legal or equitable interest in the rents generated by the Property. For this reason, under <u>Jason Realty</u>, the rents generated by the Debtor are not the property of the Debtor's estate, and cannot be used by the Debtor as cash collateral as a matter of law.

       **(ii)    Even If the Rents of the Mortgaged Property Were "Cash Collateral", the Debtor Still Cannot Established an Effective Plan of Reorganization and/or the Ability to Make Adequate Protection Payments Under the Note and Mortgage**

62. Finally, notwithstanding the conclusive precedent under New Jersey law that the rents to the Mortgaged Property are the property of NCP, assuming *arguendo* that the rents were in fact "cash collateral," the Debtor's motion would still have to be denied because the Debtor cannot propose and cannot effectuate an effectuate a plan of reorganization over NCP's objection.

63. As evidenced by the dramatic income shortfall of assets available to make post-petition payments *[Docket Entry # 1; Burchard Cert., Ex. "J" and "K"]*, the Debtor will be

unable to make property tax payments to the Borough of Matawan or fully pay to NCP the $31,090.49 due and owing on the 1st of each month post-petition. Consequently, it is clear that the Debtor is operating at a loss, and the Debtor thus cannot propose a viable plan of reorganization under Chapter 11.

64.    Furthermore, as demonstrated by the appraisal report annexed to the Certification of Marshall Burchard, the market value of the Property is $2,000,000.00, which is significantly less than the secured debts due and owing to NCP and the Borough of Matawan/ATCFII New Jersey (the holder of the real estate tax sale certificate).

65.    For all these reasons, NCP respectfully submits that additional cause exists to dismiss the Debtor's Bankruptcy under 11 U.S.C. § 1112(b)(4)(M).

**C.    The Debtor Filed Its Bankruptcy in Bad Faith**

66.    Bankruptcy courts have regularly found that the filing of a bankruptcy petition in bad faith is grounds for dismissal of the Debtor's bankruptcy case. See, e.g., Carolin Corp. v. Miller, 886 F.2d. 693 (4th Cir, 1989), In re: MacInnis, 235 B.R. 255 (2nd Cir. 1998).

67.    In considering whether a Debtor's bankruptcy petition was filed in bad faith, the Court must consider "the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy case. In re: C-TC 9th Avenue Partnership, 113 F.3d. 1304 (2nd Cir. 1997). A bankruptcy court will deem a Debtor's bankruptcy petition to be frivolous if "it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." Id.

68.    Of particular relevance as to whether a Debtor's bankruptcy petition was filed in bad faith is whether "the petition is merely filed to obtain a tactical litigation advantage." See In

-15-

re: 15375 Memorial Corp., 589 F.3d. 605, 618 (3rd Cir. 2009); See also In re:  C-TC 9th Avenue Partnership, 113 F.3d. 1304 (2nd Cir. 1997).   The Debtor cannot merely file a bankruptcy petition to avoid the adverse consequences of an adverse State Court decision, but must be able to offer a credible plan of reorganization.

69.     Additionally, in determining whether a debtor's bankruptcy was filed in bad faith, courts in the 3rd Circuit have also looked to whether the bankrupt debtor is a single asset entity, whether the debtor's property was the subject of a foreclosure action as a result of arrearages on the debt, and whether the timing of the debtor's bankruptcy evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditor to enforce its rights.   See In re: Y.J. Sons & Co., Inc., 212 B.R. 793, 802 (D.N.J., 1997).   See also In re: Ravick Corp., 106 B.R. 834, 844 (Bankr. D.N.J., 1989), holding:

> Generally, where a debtor's reorganization effort involves essentially a two party dispute resolvable in state court, and the filing for relief under the Bankruptcy Code is intended to frustrate the legitimate efforts of creditors to enforce their rights against the debtor, dismissal for 'cause' is warranted.

(Emphasis added).

70.     Where the entity in question "has only one asset…no employees and no operating business…[and the] property is to be sold by order of the state court," a decision to "resort to the protection of the bankruptcy laws is not proper…because there is no going concern to preserve." In re Ravick Corp., 106 B.R. at 844.

71.     Here, the Debtor is a single-asset real estate entity whose bankruptcy was the result of a two-party dispute between the Debtor and NCP.  The filing was clearly a last ditch effort to delay the foreclosure sale of the Property by the Monmouth County Sheriff (or Court Appointed Special Master).

-16-

72.     Notably, the Debtor has no available assets to protect since its sole asset (i.e. the Property) is worth significantly less than the secured debts due NCP.

73.     Finally, NCP notes that while Bankruptcy Courts have held that "the filing of a second chapter 11 case is not *per se* grounds" to dismiss or afford relief from the automatic stay, bankruptcy courts have held that "[w]hen there are successive reorganization bankruptcy filings without any material changes in circumstances, the second filing is viewed as bad faith." In re Roxy Real Estate Co., Inc., 170 B.R. 571, 574 (Bankr. E.D. Pa. 1993) (citing Matter of Elmwood Development Co., 964 F.2d. 508 (5th Cir. 1992); In re Chisum, 847 F.2d. 597 (9th. Cir.) cert. den. 488 U.S. 892 (1988); In re Johnson, 708 F.2d. 865 (2d. Cir. 1983); In re Ogelsby, 158 B.R. 602 (E.D. Pa. 1993); In re March, 83 B.R. 270, 274 n. 7 (Bankr. E.D. Pa. 1988).

74.     In this instance, there are no material changes in circumstance with this Debtor. To the contrary, the Debtor commenced this bankruptcy petition in **the identical state** as it did the First Bankruptcy – as a single entity on the eve of a foreclosure sale whose secured obligations exceeded its available assets.

75.     Based upon the foregoing, NCP respectfully submits that dismissal of the Debtor's Bankruptcy is warranted under 11 U.S.C. § 1112(b).

**D.     Dismissal is in the Best Interest of Creditors and the Estate**

76.     As noted, Section 1112 of the Bankruptcy Code provides that upon the showing of "cause" by the moving party, the Court is required to convert or dismiss the case, whichever is in the best interest of creditors and the estate. While the Bankruptcy Code does not define the phrase "best interest of creditors and the estate," courts should balance the interests of the creditor parties, and have found that creditors are often the best judge of their own interests. See In re: Camden Ordnance Mfg. Co. of Arkansas, Inc., 245 B.R. 794, 802 (E.D. Pa. 2000). NCP submits that dismissal, not conversion, is in the best interest of creditors and the estate.

-17-

77. Further, where the court determines that a debtor filed its petition in bad faith, dismissal, not conversion is warranted, since conversion essentially sanctions the debtor's "improper use of the bankruptcy system." See In re: Argus Group 1700, Inc., 206 B.R. 737, 755 (Bankr. E.D. Pa. 1996). This is especially true when the matters before the bankruptcy court are, like here, essentially a two-party dispute. See In re: Nugelt, Inc., 142 B.R. 661, 669 (Bankr. D. Del. 1992) (dismissal is proper because "the case is essentially a two-party dispute between the Debtor and [its bank].")

78. Here, NCP respectfully submits that dismissal is in the best interest of creditors and the debtor's bankruptcy estate because these cases are essentially single asset real estate cases better suited for the state court foreclosure process than bankruptcy courts.

79. For these reasons, NCP submits that dismissal, not conversion, is in the best interests of creditors and the Debtor's estate.

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT NCP RELIEF FROM THE AUTOMATIC STAY

80. Section 362(d)(1) of the Bankruptcy Code provides:

> (d) On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of interest in property of such party in interest. 11 U.S.C. § 362(d)(1).

81. To the extent that this Court does not find that dismissal of the Debtor's bankruptcy case is warranted, NCP respectfully submits that "cause" exists under 11 U.S.C. § 362(d)(1) to grant NCP relief from the automatic stay in order that NCP may continue its pre-petition efforts to enforce its rights against its collateral.

82. First, cause exists under Section 362(d)(1) to grant NCP relief from the automatic stay because, as discussed at length above, the Debtor commenced its bankruptcy case in bad

-18-

faith. See In re: Kornhauser, 184 B.R. 425, 428 (Bankr. S.D.N.Y. 1995), citing In re: Laguna Associates, 30 F.3d. 734 (6th Cir. 1994) for the proposition that "it is well settled that a bad faith filing constitutes 'cause' for relief from the automatic stay."); See also In re: Dunes Casino Hotel, 63 B.R. 939, 944 (D.N.J. 1986) ("A finding of lack of good faith by the debtor in filing a Chapter 11 petition may be sufficient cause to vacate the automatic stay."). Importantly, the standard for bad faith is the same in the context of a dismissal under Section 1112(b) and relief from the stay pursuant to Section 362(d)(1). See In re: Porter, 371 B.R. 739, 745 (Bankr. E.D. Pa., 2007) (holding that "facts that would justify the dismissal of a bankruptcy also constitute 'cause' for granting relief under section 362(d)(1)").

83.     Second, as set forth in detail, supra, the Debtor has not and cannot establish that it can provide NCP with adequate protection should Debtor be permitted to continue operating its business under Chapter 11 protection. Importantly, when (as here) a debtor seeks to use cash collateral, it is the debtor's burden to establish adequate protection. 11 U.S.C. § 363(p)(1).

84.     Adequate protection is not defined in the Bankruptcy Code, but generally means that the value of the creditor's interest in the collateral must be protected from diminution while the property is being used or retained in a bankruptcy case. See United Savings Ass'n of Tx. v. Timers of Inwood Forest Assoc., Ltd., 484 U.S. 365 (1988).

85.     Importantly, it is the **debtor's burden** to prove that adequate protection has been provided. See 11 U.S.C. § 363(p)(1). Mere speculation and vague statements by a debtor as to the adequacy of its proposed protection for a creditor is not enough to satisfy this high standard. See, e.g., Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re: Swedeland Dev. Group, Inc.), 16 Fed. 552, 567 (3d. Cir. 1994). (rejecting speculative adequate protection remedy as

inadequate); In re: Mosello, 195 B.R. 277, 292 (Bankr. S.D.N.Y. 1996 ("A finding of adequate protection should be premises on facts, or on projections grounded on a firm evidentiary basis.").

86. The Debtor's instant bankruptcy petition makes clear that it will be unable to make the $31,090.49 monthly payments due post-petition under the Mortgage. Any failure to make these payments (and post-petition taxes, etc.) will cause further diminution in the Debtor's bankruptcy estate and cannot possibly satisfy the "adequate protection" standards outlined above.

87. Consequently, NCP respectfully submits that the Debtor cannot provide NCP or this Court with evidence that it can cure these significant shortfalls due NCP and the Borough of Matawan. Equally troubling, the Debtor cannot provide a legitimate proposed plan of reorganization that demonstrates how these pre- and post- petition delinquencies can possibly be cured. Bankruptcy Courts have held that a debtor's inability to effectuate a confirmable plan of reorganization is grounds for relief from the automatic stay. See In re: Calvanese, 169 B.R. 104 (Bkrtcy. E.D. Pa., 1994).

88. For the foregoing reasons, NCP respectfully submits that, should the Court decline to dismiss the Debtor's bankruptcy case, the Court should nevertheless respectfully grant NCP relief from the automatic stay to permit NCP to continue its pre-petition efforts to enforce its rights against its collateral.

BE:11751842.1/NOR306-278956

## CONCLUSION

Wherefore, NCP respectfully requests this Honorable Court dismiss the Debtor's Chapter

11 Bankruptcy, or in the alternative, grant NCP relief from the automatic stay.

Dated:      May 18, 2021
                Roseland, New Jersey

**BRACH EICHLER L.L.C.**
Attorneys for Secured Creditor,
NCP Sigma LLC
101 Eisenhower Parkway
Roseland, NJ 07068-1067


BY:  /s/ Bob Kasolas, Esq.
        Bob Kasolas

BE:11751842.1/NOR306-278956